## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ORLANDO CALVO PINO,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 20-2044-JAR-GEB** |
| **MATTHEW R. WEIDL, et al.,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Orlando Calvo Pino brings this civil rights action against Defendants Matthew R. Weidl, Kenneth M. McGovern, Gregory C. Burns, and the City of Lawrence, Kansas. Plaintiff alleges individual-capacity claims against Officer Weidl and official capacity claims against the remaining Defendants. This matter is before the Court on Sheriff McGovern's Motion to Dismiss (Doc. 9) for lack of jurisdiction due to sovereign immunity or, in the alternative, for failure to state a claim upon which relief can be granted. The motion is fully briefed, and the Court is prepared to rule.[1] As described more fully below, the Court grants Sheriff McGovern's motion to dismiss under Fed. R. Civ. P. 12(b)(6).

### I.    Background

The following facts are alleged in the First Amended Complaint ("FAC") and assumed to be true for purposes of deciding this motion. On February 2, 2018, shortly before 2:00 a.m., Plaintiff was driving his vehicle west on I-70 when he passed Defendant Matthew Weidl, a police officer employed by the City of Lawrence, Kansas ("the City"), who was on patrol and

---

[1] Plaintiff filed the First Amended Complaint after Defendant's motion, dropping his claim for punitive damages. *See* Doc. 13. The parties to the motion agree that Sheriff McGovern's remaining arguments addressing sovereign immunity and failure to state a claim also apply to the First Amended Complaint. *See* Doc. 18-1.

traveling in the same direction.  Once past the officer's vehicle, Plaintiff signaled and moved into

Officer Weidl's lane before Weidl considered the lane change to be safe.  Officer Weidl followed

Plaintiff for two miles, then initiated a traffic stop.

Upon approaching Plaintiff's vehicle, Officer Weidl observed a small puppy in the front

passenger seat, a large bag of dog food in the back of the vehicle, and a saddle and cowboy hat in

the rear of the hatchback.  Plaintiff, a Spanish speaker who knew little English, provided his

Colorado driver's license and rental documentation.  When confronted with this language barrier,

Officer Weidl asked Plaintiff back to his patrol car so that they could call an interpreter.  Plaintiff

agreed, joined Weidl in the patrol car, and an interpreter promptly joined them by phone.

Approximately seven minutes passed while Officer Weidl, the interpreter, and Plaintiff

traded basic information.  Officer Weidl eventually instructed the interpreter to explain that

Plaintiff would be given only a written warning, and that his assistance was only needed to get

basic information correct.  However, Officer Weidl then spent roughly ten more minutes

questioning Plaintiff in detail about

> his travel from Colorado to New York, when he left New York, where he
> stopped between New York and Kansas, where he had slept while traveling
> and whether he had family in the United States—in short, all questions that
> had nothing to do with the information needed to prepare and issue a written
> warning.[2]

Officer Weidl ultimately returned Plaintiff's information, but as Plaintiff was walking

back to his car, Officer Weidl re-engaged him by asking if he would stay for further questions

and if Weidl could search his vehicle.  Plaintiff gave permission, and Officer Weidl—eventually

joined by Officer Henderson—searched the vehicle.  The officers observed a satchel hanging

---

[2] Doc. 13 ¶ 25.

from the driver's seat that contained a pistol and notebook with numbers.  When Henderson searched behind the driver's and passenger's seats, he found currency in the bag of dog food.

Officer Weidl gave *Miranda* warnings to Plaintiff and Plaintiff agreed to speak with him, informing the officers that the money was from the sale of horses some days before.  Officer Weidl ultimately arrested Plaintiff and took him to the Investigations and Training Center in Lawrence for further processing and assistance.  Plaintiff was charged with Unlawful Acts Involving Proceeds Derived from Violations of K.S.A. 21-5701 through 21-5717, a drug severity level 4 felony.

Plaintiff obtained defense counsel and eventually moved to suppress all evidence obtained after Officer Weidl announced his intent to give Plaintiff only a warning.  A Douglas County District Court granted the motion, finding Officer Weidl lacked reasonable suspicion to prolong the traffic stop.

## II.    Standards

### A.    Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[3]  A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[4]  The party who seeks to invoke federal jurisdiction bears the burden of

---

[3] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal citations omitted)).

[4] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

establishing that such jurisdiction is proper.[5]  Mere conclusory allegations of jurisdiction are not enough.[6]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) generally takes one of two forms: either a facial challenge or a factual challenge.[7]  A facial challenge attacks the sufficiency of the allegations in the complaint, while a factual challenge goes beyond the complaint to attack "the facts upon which subject matter jurisdiction is based."[8]  In reviewing a facial challenge, the Court accepts the complaint's allegations as true, whereas in a factual challenge the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve jurisdictional facts."[9]

**B.      Fed. R. Civ. P. 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[10]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[11]  The plausibility standard does not

---

[5] *Montoya*, 296 F.3d at 955.

[6] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[7] *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1121, 1125 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

[8] *Id.*

[9] *Id.* (citation omitted).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

[11] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

require a showing of a probability that "a defendant has acted unlawfully,"[12] but requires more than "a sheer possibility."[13]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[14]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[15]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[16]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]

## III.    Discussion

In the FAC, Plaintiff alleges five claims under 42 U.S.C. § 1983.  Counts I–III allege individual-capacity claims against Officer Weidl; Count IV alleges an official-capacity claim for failure to train or inadequate training against the City, Sheriff McGovern, and Chief Burns; and Count V alleges an official-capacity claim against the City, Sheriff McGovern, and Chief Burns based on the City's policies and procedures.

Sheriff McGovern's motion seeks dismissal based on Eleventh Amendment immunity and on the merits.  Because Eleventh Amendment immunity is jurisdictional, the Court addresses

---

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Id.*

[14] *Id.*

[15]*Id.* at 679.

[16]*Id.*

[17]*Id.* at 678.

it first.[18]  Plaintiff suggests that the jurisdictional determination is inherently inseparable from the merits because any claim would be meritless without jurisdiction, but the instant motion does not present such an inseparable issue.[19]  "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts statutory or constitutional *power* to adjudicate the case."[20]

### A.      Eleventh Amendment

Eleventh Amendment immunity extends both to a state and to entities deemed arms of the state, and bars federal court claims for money damages against covered entities.[21]  When these claims are made against public officials in their official capacities, they are deemed to be made against the state entity—the office itself—and are similarly barred.[22]  However, this immunity "does not extend to counties and similar municipal corporations."[23]  Because county entities do not enjoy immunity, county officials like Sheriff McGovern are typically not entitled to immunity.[24]  Nonetheless, Sheriff McGovern argues that he is an arm of the state, rather than the county.  To determine whether an entity acts as an arm of the state, and thus enjoys immunity, the Court must weigh the four factors established by the Supreme Court and Tenth Circuit in *Mount Healthy City School District Board of Education v. Doyle*,[25] and *Steadfast Insurance Co.*

---

[18] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

[19] *See Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) ("intertwining" results when subject-matter jurisdiction "depend[s] upon the same [law] which provides the substantive claim").

[20] *Steel Co.*, 523 U.S. at 89 (emphasis in original).

[21] *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

[22] *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

[23] *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

[24] *See Garcia v. Bd. of Educ. of Socorro Consol. Sch. Dist.*, 777 F.2d 1403, 1407 (10th Cir. 1985) (explaining that any official capacity suit is "subject to" the Eleventh Amendment immunity restriction, but a "local" entity "does not enjoy" immunity).

[25] 429 U.S. at 280.

*v. Agricultural Insurance Co.*[26]: (1) the character of the defendant under state law; (2) the autonomy of the defendant under state law; (3) the defendant's finances; and (4) whether the defendant is concerned primarily with state or local affairs.[27]

When the parties briefed the instant motion, the issue of whether Kansas county sheriffs are county or state officials for purposes of Eleventh Amendment immunity was a divided question in this district.[28]  After briefing closed, the Tenth Circuit issued its decision in *Couser v. Gay*,[29] concluding that the *Mt. Healthy/Steadfast* factors and the Supreme Court's decision in *McMillian v. Monroe County*[30] counsel in favor of treating Kansas county sheriffs as county, not state, actors.[31]  The court applied the *Mt. Healthy/Steadfast* factors to Kansas sheriffs, and in doing so compared Kansas with the Alabama framework discussed in *McMillan*, where the Supreme Court held that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties."[32]

The Tenth Circuit explained that "like the *Mt. Healthy/Steadfast* arm-of-the-state inquiry, the *McMillan* Court's inquiry is 'dependent on an analysis of state law.'"[33]  Alabama's "unique

---

[26] 507 F.3d 1250 (10th Cir. 2007).

[27] *Id.* at 1253; *Mt. Healthy*, 429 U.S. at 280.

[28] *See, e.g.*, *Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007) (finding sheriff was entitled to Eleventh Amendment immunity as a state actor without addressing *McMillian* or *Mt. Healthy/Steadfast* factors); *Broyles v. Marks*, No. 18-3030-SAC, 2018 WL 2321822, at *4 (D. Kan. May 22, 2018) (finding Kansas sheriffs act on behalf of the State); *Reyes v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 07-2193-KHV, 2008 WL 2704160, at *7–9 (D. Kan. July 3, 2008) (finding Kansas sheriff is a county official and not entitled to Eleventh Amendment immunity).

[29] 959 F.3d 1018 (10th Cir. 2020).

[30] 520 U.S. 781 (1997).

[31] 959 F.3d at 1030.

[32] 520 U.S. at 793.  *McMillian* was not an Eleventh Amendment immunity decision; the Court considered the question in the context of the county's argument that it could not be liable for its sheriff's actions because he was a state policy maker.  *Id.* at 783.

[33] *Couser*, 959 F.3d at 1025 (quoting *McMillan*, 520 U.S. at 795).

constitutional history," which sought to rein in abuses by "renegade local sheriffs" in part by expressly placing them within the state's executive department and making them subject to impeachment, "indicat[ed] that sheriffs were considered state officials."[34]  The Tenth Circuit distinguished *McMillan*, finding that  "Alabama law treats sheriffs differently."[35]

> All four factors support finding that Kansas sheriffs are county actors: (1) Kansas law lists sheriffs under county officer provisions; (2) Kansas sheriffs have substantial autonomy from the state in their law enforcement functions compared to their Alabama counterparts; (3) the county controls the sheriff's salary and books; and (4) the sheriff is primarily concerned with local affairs.[36]

*Couser* resolves the issue presented by Sheriff McGovern's motion claiming Kansas sheriffs should be treated as arms of the State for purposes of sovereign immunity.  Kansas sheriffs, "when executing their law enforcement duties, represent their counties, not the State of Kansas."[37]  Sheriff McGovern is not entitled to Eleventh Amendment immunity.

## B.  *Monell* **Claims**

Sheriff McGovern next moves to dismiss Plaintiff's two official-capacity claims for failure to state a claim upon which relief may be granted.  Count IV alleges a failure-to-train claim, while Count V is styled as a claim based upon "official policies, procedures, practices, customs, and usages or inadequate policies and procedures,"[38] and further alleges that the City, Sheriff McGovern, and Chief Burns failed to administer training and supervision to ensure that constitutional deprivations by Lawrence Police officers did not occur.

---

[34] *Id.*

[35] *Id.* at 1027.

[36] *Id.* at 1031.

[37] *Id.*

[38] Doc. 13 ¶ 65.

Under *Monell v. Department of Social Services of the City of New York*,[39] an injured plaintiff may hold a municipal entity liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[] the injury."[40]  The claim has three general requirements: (1) an underlying injury to a constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link between the policy or custom and the injury.[41]

A plaintiff may demonstrate a "municipal policy or custom" in one of several ways:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom the authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[42]

However, *Monell* claims are not meant to create *respondeat superior* liability for every constitutional violation that may involve a municipal employee.[43]  Ordinarily, a single incident of unconstitutional behavior is insufficient to impose municipal liability.[44]

### 1.    Failure to Train, Adopt Policy, or Supervise

Count IV asserts a failure-to-train claim.  Count V includes claims that Sheriff McGovern failed to adopt policies or supervise in a manner that would have avoided Plaintiff's

---

[39] 436 U.S. 658 (1978).

[40] *Id.* at 694.

[41] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[42] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

[43] *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on *respondeat superior* theory.").

[44] *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

constitutional injury.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[45]  Because these theories are "far more nebulous" than other policy-based claims, a plaintiff must show that an alleged failure to train amounted to "deliberate indifference to the rights of persons with whom the [untrained employee] came into contact."[46]  Under the "deliberate indifference" standard,

> "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'": "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  Evidence of "a pre-existing pattern of violations" is only unnecessary "in a narrow range of circumstances," "however rare," in which "the unconstitutional consequences of a failure to train" are "highly predictable" and "patently obvious."[47]

Sheriff McGovern argues that the FAC fails to sufficiently allege deliberate indifference. The Court agrees.  While the FAC contains allegations on both the scope of Sheriff McGovern's training-related duties and categories of training-related shortcomings, Plaintiff's "deliberate indifference" allegations are not so developed.  On Count IV, the only mention of "deliberate indifference" or relevant factual support appears in paragraph 59, which states: "The failure of Defendants [including] McGovern to provide reasonable and adequate training [in three categories] demonstrates deliberate indifference."[48]  This conclusory recitation fails to

---

[45] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[46] *Id.* (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

[47] *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (quoting *Connick*, 563 U.S. at 62–64); *see City of Canton*, 489 U.S. at 389 ("'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers.").

[48] Doc. 13 ¶ 59.

demonstrate the necessary "pattern of similar constitutional violations," required for deliberate indifference.[49]

Plaintiff's Count V alleges failure to supervise, and a failure to adopt policies that would have prevented his injuries.[50]  Whether styled as training, supervision, or policy, "[w]hen the asserted policy consists of the failure to act," the claim remains subject to the deliberate indifference standard.[51]  Similar to Count IV, factual support for deliberate indifference appears one time in Paragraph 74: "[i]n their failures as described, Defendants . . . and McGovern intentionally disregarded known facts *or, alternatively, were deliberately indifferent* to a risk of constitutional violation of which they knew or should have known and their culpability caused [Plaintiff's injury]."[52]  But the deliberate indifference standard requires that "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[53]  To sufficiently plead his claim, Plaintiff must allege facts in support of that notice, which requires more than a conclusory statement that notice existed.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), because Plaintiff has not plausibly alleged a municipal failure-to-train resulting from deliberate indifference, Count IV is dismissed against Sheriff McGovern.  For the same reason, Count V's claim for failure to supervise or adopt a policy that would have prevented his injuries is dismissed against Sheriff McGovern.

---

[49] *Waller*, 932 F.3d at 1285.  "[Plaintiff] merely enumerates the multiple ways in which he contends the Officers were inadequately trained, but without proffering any evidence of knowledge of the purported deficiencies on the part of [Sheriff McGovern]."  *Carr v. Castle*, 337 F.3d 1221, 1239 (10th Cir. 2003).

[50] Doc. 13 ¶¶ 67–68.

[51] *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (discussing deliberate indifference standard in the context of failure-to-adopt policy claims, affirming on other grounds).

[52] Doc. 13 ¶ 74 (emphasis added).

[53] *Waller*, 932 F.3d at 1284.

## 2.      Municipal Policy or Custom

The remainder of Count V alleges that three types of "policies, procedures, practices, customs, and usages relating to the failures or actions of officers assigned to the LDCDEU" that caused Plaintiff's injuries:

> [1] unlawfully and unreasonably detaining citizens, including [Plaintiff], and prolonging traffic stops of citizens, including [Plaintiff], beyond the time reasonably required to complete the initial mission of the stop;
> [2] telling citizens, including [Plaintiff], that they are free to go but then unlawfully searching the vehicles of citizens, including [Plaintiff's], under circumstances that coerced those citizens, including [Plaintiff], into consenting to said search and seizing evidence from them and from [Plaintiff] without a warrant or arrest; and
> [3] unlawfully arresting citizens, including [Plaintiff], without probable cause based only on a mere hunch and on evidence discovered and seized during an unlawful search conducted without a warrant and not pursuant to a valid arrest . . . .[54]

Plaintiff contends that these "policies, procedures, practices, customs, and usages are so pervasive that they constitute the policy of [Defendants]."[55]

Sheriff McGovern argues that Plaintiff's allegations on his *Monell* claims are conclusory and merely parrot the elements of the claim.  Plaintiff spends much of his response discussing the first element of his *Monell* claim—his underlying constitutional injury—but fails to sufficiently address the policy or custom element of his claim.  Plaintiff alleges in the FAC that his claim is based on "policies, procedures, practices, customs, and usages," but he fails to specify whether his claim is based on formal or informal policies or practices, or ratification by a policymaker.  As another district court in this Circuit has explained:

> Pleading a municipal policy, custom, or practice is like pleading the breach element of negligence—which is also ultimately a question of fact for the jury.  The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a

---

[54] Doc. 13 ¶ 66(a)–(c).

[55] *Id.* ¶ 66.

> plausible inference that such a policy exists.  With formal or written policies, satisfying this pleading standard is easy; the plaintiff can simply allege what the policy is and where it is codified. With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible—or use other evidence, such as a police officers' statements attesting to the policy's existence.  The Tenth Circuit has not explicitly held as much, but they have implied that district court's [sic] should analyze policies, practices, or customs under *Monell* as "legal conclusions" at the pleading stage—which must be supported by facts, rather than conclusorily alleged—and not "facts" in and of themselves, to be taken as true at face value . . . .[56]

To the extent Plaintiff alleges a formal policy, he makes no reference to where such policy is contained or codified.  To the extent Plaintiff alleges informal policies, practices, custom, or usage, such a policy or custom must be "widespread, permanent, and well-settled" such that it effectively carries the force of law.[57]  In *Waller v. City & County of Denver*, when faced with similarly thin facts on an informal custom claim, the Tenth Circuit concluded that "[the plaintiff's] allegations—describing only one similar incident of excessive force prior to his own violations—fall short of plausibly alleging a 'widespread practice' of excessive force, much less [one] 'so permanent and well settled as to constitute a custom or usage with the force of law.'"[58]  Here, Plaintiff makes the conclusory assertion that unconstitutional policies exist and that certain practices are "pervasive," but he neither pleads a widespread practice of similar

---

[56] *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015) (discussing *Martinez v. Winner*, 771 F.2d 424, 443–44 (10th Cir. 1985)); *see also, e.g.*, *Sherman v. Klenke*, 653 F. App'x 580, 593 (10th Cir. 2016) (finding assertion of a policy standing alone was "wholly conclusory" and would not survive a motion to dismiss); *Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1041 (D.N.M. 2019) ("at the pleading stage, the existence of a *Monell* policy is a conclusion up to which a plaintiff must build, rather than a fact that a plaintiff may baldly assert."); *Granato v. City & Cty. of Denver*, No. 11-cv-3047-MSK-BNB, 2011 WL 3820730, at *8 (D. Colo. Aug. 30, 2011) (dismissing complaint because it provided only conclusory allegations and failed to "identify precisely what particular custom or policy" of the municipality the individual defendant was acting pursuant to, nor how that custom or policy acted to cause the individual defendant to violate the plaintiff's rights).

[57] *Waller*, 932 F.3d at 1290; *see Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[58] *Waller*, 932 F.3d at 1290.

13

constitutional violations or other factual assertions that would support the existence of informal

polices or practices.  In *Waller*, one similar incident was deemed insufficient.  Here, Plaintiff

provides no allegations about similar incidents involving Lawrence police officers.  Thus,

Plaintiff's allegations in Count V are insufficient to set forth a plausible claim for municipal

liability on the "policy or custom" element of that claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Sheriff McGovern's Motion

to Dismiss (Doc. 9) is **granted**.  Counts IV and V are dismissed against Sheriff McGovern with

prejudice for failure to state a claim upon which relief may be granted.

**IT IS SO ORDERED.**

Dated: July 13, 2020

    s/  Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE