IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | | |
|---|---|---|
| ORLANDO CALVO-PINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-2044-JAR-GEB |
| | ) | |
| OFFICER MATTHEW WEIDL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS SHERIFF RANDY ROBERTS, CITY OF LAWRENCE, AND INTERIM CHIEF ANTHONY BRIXIUS' MOTIONS TO DISMISS

### INTRODUCTION, NATURE OF THE ACTION, AND PROCEDURAL HISTORY

This is a lawsuit brought under 42 U.S.C. § 1983 alleging Fourth Amendment claims of unlawful seizure resulting from Plaintiff Orlando Calvo-Pino's unreasonably lengthy detention, an unlawful coerced search of his vehicle, and arrest without probable cause by Defendant Weidl. Plaintiff also claims that the deprivations of his constitutional rights were the result of inadequate policies of and training by Defendants City of Lawrence[1], Interim Chief of Police Anthony Brixius[2], and Sheriff Randy Roberts[3].

Plaintiff's original complaint was filed on January 29, 2020. Doc. 1. Thereafter, on March 4, 2020, then Sheriff McGovern filed a motion to dismiss. Docs. 9, 10. McGovern

---

[1]Hereinafter, "City".

[2]Brixius was named interim chief after the prior police chief, Gregory C. Burns, resigned in June, 2020.

[3]On July 20, 2020, Roberts was sworn in to fulfill the term of the prior sheriff, Kenneth McGovern, who retired effective June 27, 2020.

argued that he was entitled to dismissal of the official capacity claims against him on the basis of Eleventh Amendment immunity and because he maintained that Plaintiff had failed to allege facts sufficient to establish a plausible *Monell*[4] claim.  On March 25, Plaintiff filed a Memorandum in Opposition to the motion to dismiss and a First Amended Complaint (FAC) which sought to address issues raised by McGovern's motion.  Docs. 12, 13.  On July 13, 2020, this Court entered its Memorandum and Order, in which the Court recognized the recent Tenth Circuit decision in *Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020), and rejected Sheriff McGovern's claim that he was entitled to Eleventh Amendment immunity but granted the motion to dismiss Counts IV and V of the FAC against McGovern for failure to plausibly allege deliberate indifference and failure to allege either a widespread practice of similar constitutional violations or other factual assertions that would support the existence of informal policies or practices.  Doc. 37.

Plaintiff commenced discovery, then sought and was granted leave to file the SAC which added allegations based on evidence obtained in that discovery.  The SAC again raised claims of failure to train/inadequate training and deprivation of constitutional rights caused or contributed to by official policies, procedures, practices, customs, and usages or inadequate policies and procedures against the new sheriff, Randy Roberts, and reasserted those same claims against the City and Interim Chief of Police Anthony Brixius.  Doc. 54.  On October 12, 2020, Roberts filed a Motion to Dismiss reiterating his argument that Calvo-Pino's official capacity claims should be dismissed for failure to state a plausible claim under 42 U.S.C. § 1983.  Docs. 55, 56. Thereafter, on October 20, the City, and Interim Chief Brixius filed a Motion to Dismiss raising the same argument.  Docs. 58, 59.  Neither motion makes the specific argument that there is no

---

[4]*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

constitutional violation by Defendant Weidl.  Accordingly, this memorandum focuses solely on the sufficiency of the official capacity claims against movants Roberts, the City, and Brixius.

For the reasons herein set forth, the Court should deny these motions.

## I. THE RULE 12(b)(6) LEGAL STANDARD.

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although the rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, "will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law.")).

When considering whether a plaintiff has pleaded a plausible claim, the court must assume that the factual allegations in a complaint are true.  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 555).  But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Also, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).

## II.  CALVO-PINO ALLEGES SUFFICIENT FACTS TO STATE PLAUSIBLE OFFICIAL-CAPACITY CLAIMS UNDER *MONELL*.

Calvo-Pino states two official-capacity claims against the moving defendants.  In Count IV, Calvo-Pino alleges that Sheriff Roberts, the City, and Interim Chief Brixius failed to train or provided inadequate training to the officers who were assigned to the Lawrence/Douglas County Drug Enforcement Unit[5], including Defendant Weidl.  In Count V, Calvo-Pino claims that the conduct of Defendant Wiedl was directly caused or contributed to by official policies, procedures, practices, customs, and usages or inadequate policies and procedures of Roberts, the City, and Brixius.  With respect to both claims, the SAC "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570).  Calvo-Pino's claims have facial plausibility because he has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).  The allegations, taken as true, provide "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC*, 555 F.3d at 1192 (quoting *Robbins v. Oklahoma*, 519 F.3d at 1247).

---

[5]Hereinafter, "LDCDEU".

**A.  The applicable *Monell* standards.**

Liability under *Monell* and Tenth Circuit case law requires more than a violation by the individual defendant, *i.e.*, Defendant Weidl.  A plaintiff must allege: (1) that a violation was committed by an officer; (2) that there is a policy or custom (as defined); and (3) a direct causal link between the policy or custom and the injury alleged.  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).  "Policy or custom" includes: (1) a formal regulation or policy statement; (2) an informal custom that amounts to a widespread and well-settled practice; (3) a decision of an employee with final policymaking authority; (4) ratification by a final policymaker of a subordinate's decision; or (5) failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.  *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

This Court previously dismissed Counts IV and V against former defendant McGovern because it concluded that the FAC contained insufficient factual allegations of deliberate indifference.  Doc. 37, at 10-11.

> . . .  "The deliberate indifference standard may be satisfied when the [official capacity defendant] has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it deliberately chooses to disregard the risk of harm."  *Barney v. Pusipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).  "In most instances, notice can be established by proving the existence of a pattern of tortious conduct."  *Id*.  Deliberate indifference "may be found absent a pattern of unconstitutional behavior" only in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of [an official capacity defendant's] action or inaction."  *Id*. at 1307-08 (quoting *Brown*, 520 U.S. at 409, 117 S.Ct. 1382).

*Waller v. City and County of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019).  Even if this Court concludes that Plaintiff has not alleged a pattern of tortious conduct despite the allegations in the SAC to the effect that the Sheriff, the Lawrence Police Department (LPD), and the Interim Chief were on notice that the conduct engaged in by Defendant Weidl was unconstitutional and

widespread, this case presents one of the "narrow range of circumstances," "however rare," in which the unconstitutional consequences of a failure to train" are "'highly predictable'" and "patently obvious." *Id*. at 1285 (quoting *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). The SAC goes well beyond the FAC, containing allegations that detail facts that would support the conclusion that the Sheriff, the City, and the Chief intentionally disregarded known facts or were deliberately indifferent to a risk of constitutional violation of which they knew or should have known and their culpability caused or contributed to Plaintiff's injury.

**B. The Second Amended Complaint alleges sufficient facts to state a claim for failure to train/inadequate training.**

Count IV alleges that the moving defendants had the authority and a duty to train the officers under their command who were assigned to the LDCDEU. SAC at ¶¶ 65, 56. It alleges more specifically that Roberts, the City, and Brixius had a duty to provide reasonable training to prevent the officers under their supervision who were assigned to the LDCDEU, including Defendant Weidl, from:

> a. unlawfully and unreasonably detaining citizens, including Calvo-Pino, and prolonging traffic stops of citizens, including Calvo-Pino, beyond the time reasonably required to complete the initial mission of the stop;

> b. telling citizens, including Calvo-Pino, that they are free to go but then unlawfully searching the vehicles of citizens, including Calvo-Pino's, under circumstances that coerced those citizens, including Calvo-Pino, into consenting to said search and seizing evidence from them and from Calvo-Pino without a warrant or arrest; and,

> c. unlawfully arresting citizens, including Calvo-Pino, without probable cause based only on a mere hunch and on evidence discovered and seized during an unlawful search conducted without a warrant and not pursuant to a valid arrest.

*Id*. at ¶ 67. Those subparagraphs link the kind of training that had it been provided, or adequately provided, would have prevented the unconstitutional behavior in which Weidl

engaged with his conduct.  The SAC alleges that Roberts, the City, and Brixius failed to train the officers under their supervision who were assigned to the LDCDEU, including Weidl, in a manner that reasonable officials, commanders, police chiefs, and sheriffs would have under the circumstances.  *Id.* at ¶ 68.  In paragraph 69, it further alleges that the failure of the moving defendants to provide reasonable and adequate training to prevent officers under their supervision who were assigned to the LDCDEU from engaging in the conduct described in subparagraphs a, b, and c (which are identical to the subparagraphs of ¶ 67) amounts to a custom and demonstrates a deliberate indifference to or tacit authorization or ratification of the acts and omissions of Defendant Weidl.  *Id.* at ¶ 69.  In paragraph 70, the SAC alleges that in these failures, the City, Brixius, and Roberts intentionally disregarded known facts or, alternatively, were deliberately indifferent to a risk of constitutional violation of which they knew or should have known – as specifically detailed in ¶¶ 41-41o – and their culpability in that regard – caused the deprivation of Calvo-Pino's constitutional rights.  And it alleges that the failure of these defendants to adequately train the LDCDEU officers under their supervision, and particularly Weidl, proximately caused Calvo-Pino to be deprived of his constitutional rights and caused him injury.  *Id.* at ¶¶ 71, 72.

In short, the SAC alleges (1) that constitutional violations were committed by Officer Weidl; (2) that there is a policy or custom of failing to train or providing inadequate training that would have prevented those violations; and (3) a direct causal link between the policy or custom and the injury alleged.  The SAC states a § 1983 *Monell* claim of failure to train/inadequate training against these defendants, especially in light of the additional facts detailing the character of the LDCDEU as a joint venture and linking the Sheriff's actions and failures to those of the City and the Chief as well as to Weidl's conduct; the flawed training and supervision of Weidl;

the allegations from which it could be concluded that the Sheriff, the City, and the Chief intentionally disregarded known facts or were deliberately indifferent to the risk of constitutional violations; and, allegations that these defendants were on notice that the conduct in which Weidl engaged was unconstitutional and widespread, all as discussed *infra* at Section D.

> ### C.  The Second Amended Complaint alleges sufficient facts to state a *Monell* claim for deprivation of rights directly caused or contributed to by official policies, procedures, practices, customs, and usages or inadequate policies and procedures.

Moving defendants' argument as to Count V of the SAC fails as well because it alleges sufficient facts to state a *Monell* claim for deprivation of rights caused or contributed to by official policies, procedures, practices, customs, and usages or inadequate policies and procedures.  Paragraph 75 alleges three violations of Calvo-Pino's constitutional rights by Weidl. The SAC further alleges that Weidl's unconstitutional conduct resulted from certain improper policies, procedures, practices, customs, and usages of the LPD, the Douglas County Sheriff's Office ("DCS"), and particularly the LDCDEU, that directly caused or contributed to the constitutional deprivations suffered by Calvo-Pino.  SAC at ¶ 76.  It then alleges the existence of certain policies, procedures, practices, customs, and usages relating to the failures or actions of officers assigned to the LDCDEU in:

> a.  unlawfully and unreasonably detaining citizens, including Calvo-Pino, and prolonging traffic stops of citizens, including Calvo-Pino, beyond the time reasonably required to complete the initial mission of the stop;

> b.  telling citizens, including Calvo-Pino, that they are free to go but then unlawfully searching the vehicles of citizens, including Calvo-Pino's, under circumstances that coerced those citizens, including Calvo-Pino, into consenting to said search and seizing evidence from them and from Calvo-Pino without a warrant or arrest; and,

> c.  unlawfully arresting citizens, including Calvo-Pino, without probable cause based only on a mere hunch and on evidence discovered and seized during an unlawful search conducted without a warrant and not pursuant to a valid arrest,

(all of which are the constitutional violations alleged to have occurred) and that such policies, procedures, practices, customs, and usages are so pervasive that they constitute the policy of the City and the LPD, the DCS, and the LDCDEU, and that they were the moving force behind and thereby caused the constitutional deprivations suffered by Calvo-Pino as herein alleged.  *Id*. at ¶ 77.

The SAC also contemplates that in the alternative, there was a failure to adopt training and supervision and policies, procedures, practices, customs, and usages which would have prevented the constitutional deprivations suffered by Plaintiff Calvo-Pino.  *Id*. at ¶ 78.  In paragraphs 79-81, the SAC alleges that these defendants were vested with the authority to recommend and/or establish and promulgate policies to govern, guide, and control the officers assigned to the LDCDEU as are required for lawful and effective administration and the protection of citizens and fellow officers which would prevent them from engaging in the conduct that resulted in the three constitutional violations described in ¶ 77.  It alleges that the Roberts, the City, and Brixius failed to establish and administer training and supervision and policies, procedures, practices, and usages in a manner calculated to assure officers assigned to the LDCDEU do not present a risk or unnecessarily increase the risk of deprivations of the constitutional rights of citizens.  SAC at ¶ 82.  The SAC alleges that Roberts, the City, and Brixius were aware of the training and of the policies, procedures, practices, customs, and usages of the officers from the LPD and the DCS assigned to the LDCDEU and knew or should have known that the training and supervision and the policies, procedures, practices, customs, and usages of the LDCDEU, or the absence of same, presented a risk and/or unnecessarily increased the risk of violations of the constitutional rights of citizens.  *Id*. at ¶ 83.  It alleges that these defendants have the power and responsibility to prevent the existence of policies, procedures,

practices, customs, and usages which result in violations of the constitutional rights of citizens such as that suffered by Plaintiff Calvo-Pino. *Id*. at ¶ 84.  It alleges that Roberts is the official policy maker and final decision maker for the Sheriff's Department, that the City and Brixius are the official policy maker and final decision maker for the LPD and that their failure to affirmatively act in the face of policies, procedures, practices, customs, and usages which resulted in conduct that violated constitutional rights establishes a policy to condone and otherwise tolerate unconstitutional conduct in general, and specifically, the unconstitutional conduct alleged herein. *Id*. at ¶ 85.  It alleges that had affirmative action been taken to recommend and establish training and policies, procedures, practices, and usages which were reasonably calculated to assure that officers were properly trained, the constitutional deprivation suffered by Calvo-Pino would not have occurred.  *Id*.  And it alleges that the moving defendants intentionally disregarded known facts or, alternatively, were deliberately indifferent to a risk of constitutional violation of which they knew or should have known – as specifically detailed in ¶¶41-41o – and their culpability caused the deprivation of Calvo-Pino's constitutional rights.  *Id*. at ¶ 86.

The allegations in the SAC sufficiently allege: (1) a constitutional violation committed by Weidl; (2) that there is a policy, procedure, practice, usage, or custom or lack of same; (3) a direct causal link between the policy or custom and the injury alleged; and (4) that the moving defendants intentionally disregarded known facts, or, alternatively, were deliberately indifferent to the risk of a constitutional violation.  Accordingly, the SAC states a *Monell* claim for deprivation of constitutional rights directly caused or contributed to by official policies, procedures, practices, customs, and usages or inadequate policies and procedures against Roberts, the City, and Brixius.

**D. The Second Amended Complaint alleges sufficient facts which if proven would permit conclusions that the LDCDEU is a joint venture between the Sheriff's Office and the Lawrence Police Department; that there is a nexus between training and supervision failures and inadequacies and the deprivation of Plaintiff's constitutional rights; that moving defendants intentionally disregarded known facts or were deliberately indifferent to the risk of constitutional violation all to support Plaintiff's official capacity claims.**

As stated, *supra* at 5-6, the SAC contains new allegations detailing how the LDCDEU is a joint venture between the DCS and the LPD pursuant to a written Memorandum of Understanding (MOU).  Pursuant to the MOU, members of the LDCDEU were cross-deputized as was Defendant Weidl himself.  SAC at ¶¶14, 15.  Also pursuant to the MOU, revenues from drug forfeitures were shared by the LPD and the DCS with some revenue provided to the Douglas County District Attorney and the LDCDEU's own budget.  SAC at ¶ 19.  LDCDEU officers' duties were divided per agreement between the two agencies with DCS officers working undercover in unmarked vehicles while LPD officers were uniformed, drove marked vehicles, and made traffic stops for the purpose of drug trafficking interdiction.  SAC at ¶ 16. LDCDEU officers were supervised by two superiors – one each from the LPD and the DCS. SAC at ¶ 17.

The SAC also alleges that Defendant Weidl had not been trained in and was not aware of factors or circumstances other than threatening or physically harming a subject that could render coercive the questioning of a traffic stop subject.  SAC at ¶ 39.  The training and supervision of Weidl was flawed; no LPD supervisor of Weidl had instructed or counseled him in how to avoid unlawful prolonged detentions after a traffic stop despite the U.S. Supreme Court holding in *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (an officer may conduct certain unrelated checks during an otherwise lawful traffic stop but may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual).  SAC at

¶ 40.  And no supervisor had ever checked on Weidl or monitored his law enforcement activities to determine whether or not Weidl was avoiding unlawful prolonged traffic stops during his drug interdiction duties even though those superiors knew that there were law enforcement practices that could render unlawful such prolonged traffic stops.  *Id*.

Discovery also informed new allegations in the SAC which, if proven, would permit a determination that the City, the Chief, and the Sheriff intentionally disregarded known facts or were deliberately indifferent to the risk of constitutional violation of which they knew or should have known and which caused the deprivation of Plaintiff Calvo-Pino's rights.  At no time relevant to this cause did the DCS, the LDP, or the Interim Chief conduct any monitoring or supervision of LDCDEU officers – including Weidl – making traffic stops as a part of the highway drug interdiction activities of LDCDEU officers.  SAC at ¶¶ 41e and 41i.  Nor did the DCS, the LDP, or the Interim Chief make any inquiries, formal or informal, to determine whether LDCDEU officers conducting drug interdiction stops were engaging in prolonged traffic stops that could render such detentions unlawful.  SAC at ¶¶ 41f and 41j.  The DCS, the LDP, and the Interim Chief had *no* policies and *no* unwritten practices to guide officers conducting drug interdiction traffic stops as to how to avoid prolonged detentions that could render them unlawful.  SAC at ¶¶ 41g and 41k.  Even though Defendant Weidl was deputized as a DCS's Deputy, the DCS, the LDP, and the Interim Chief made no effort and undertook no actions to determine whether or not Weidl had been trained in factors that could make prolonged traffic stops unlawful, whether Weidl understood those factors, and whether or not Weidl was improperly allowing such factors to compromise the voluntary nature of traffic stop interrogations by rendering them coercive.  SAC at ¶¶ 41h and 41l.  Essentially, Weidl conducted traffic stop interrogations as a part of his highway drug interdiction duties without any

12

effective training or supervision as to factors that could render interrogations coercive and/or otherwise unlawful.  Both the LPD and DCS shared the benefits of Weidl's LDCDEU activities but neither agency provided training and supervision for which each was jointly responsible to assure that those activities were conducted lawfully.  SAC at ¶ 41m.

The DCS, the LPD, and the Interim Chief knew or should have known that at least for a decade before Plaintiff's detention there were factors, practices, and activities employed in traffic stops that rendered those stops unlawful or unconstitutional but undertook no effective actions to train Defendant Weidl or other LDCDEU members about those factors or practices or how to conduct traffic stop interrogations that would not render such stops unlawful.  SAC at ¶ 41n.

All of those alleged failures persisted – and, as alleged in the SAC at ¶ 41o, caused the violation of Plaintiff's constitutional rights – even though the DCS, the LPD, and the Interim Chief were on notice that conduct such as that engaged in by Defendant Weidl was unconstitutional *and* widespread by virtue of numerous cases brought in federal and state court involving the conduct of Kansas Highway Patrol troopers, county sheriffs and deputies, and various local police officers suppressing evidence and holding "under strikingly similar circumstances, that an officer . . . did not have reasonable suspicion to further detain a defendant after issuing a speeding warning."  *Vasquez v. Lewis*, 834 F.3d 1132, 1138-39 (10th Cir. 2016) (citing *United States v. Wood*, 106 F.3d 942, 944, 948 (10th Cir. 1997)).  The DCS, the LPD, and the Interim Chief can hardly claim to be uninformed about the maneuver employed by Weidl and recently described by the Kansas Court of Appeals as follows:

> After telling [the driver] to have a safe trip [the trooper] turned his body, took two steps toward his patrol vehicle, turned back around, and through the Escalade's still open passenger window, asked [the driver] if he would answer a few more questions.  This maneuver is known as the "Kansas Two Step" and is taught to all Kansas Highway Patrol

officers as a way to break off an initial traffic detention and attempt to reengage the
driver in what would then be a consensual encounter.

*State v. Gonzalez*, 455 P.3d 419, 423 (Kan.App. 2019) (*quoted in Shaw v. Jones*, No. 19-1343-

KHV, 2020 WL 210298 (D.Kan. May 1, 2020) (observing that "the KHP has maintained this

practice since 2011")).  Although these two opinions post-date Weidl's stop of Calvo-Pino, they

are testament to the long-standing and pervasive use of the unconstitutional technique throughout

Kansas.  In sum, the SAC contains factual allegations – now supported by documents and

deposition testimony –  that the defendants will be hard-pressed to credibly deny to the effect

that they are (a) on notice of the law prohibiting prolonged detentions arising out of routine

traffic stops and (b) of the use throughout Kansas of techniques that unlawfully prolong routine

traffic stops but (c) have done nothing to train Weidl or the other LDCDEU officers to stop their

practice.  This is indeed a case in which the "unconstitutional consequences of a failure to train"

were "'highly predictable'" and "patently obvious."  Moreover, the defendants had notice of the

law and the unconstitutional practice, but their response was to do nothing – they were

deliberately indifferent to the risk of constitutional harm and it led directly to the unlawful

detention of Calvo-Pino.

**CONCLUSION**

Calvo-Pino has here demonstrated that his Second Amended Complaint alleges sufficient

facts – with significant detail – to create a nexus between Defendant Weidl's unconstitutional

conduct and the failure to train/inadequate training and between Weidl's conduct and the

policies, procedures, practices, customs, and usages or absent/inadequate policies and procedures

for which the moving defendants, as official policy makers and final decision makers are

responsible.  He also has alleged facts from which it could be concluded that the moving

defendants had notice of widespread unconstitutional conduct that they intentionally disregarded

14

or that they were deliberately indifferent to a risk of constitutional violation supporting *Monell* claims of either failure to train/inadequate training or deprivation of constitutional rights directly caused or contributed by policies, procedures, practices, customs, and usages or inadequate policies and procedures.  These defendants had reason to know of the potential for the constitutional violations that Weidl perpetrated on Calvo-Pino.  The motions before the Court are for dismissal, not for summary judgment.  The Second Amended Complaint meets the lesser standard applicable to motions to dismiss.  Accordingly, this Court should reject defendants' argument for dismissal of the claims against him and deny their motions to dismiss.

Respectfully submitted,

LAW OFFICE OF ARTHUR BENSON II

By  s/ Jamie Kathryn Lansford_____
Arthur A. Benson II  D.Kan. Bar # 70134
Jamie Kathryn Lansford D.Kan. Bar # 70220
4006 Central Avenue
Kansas City, Missouri 64111
(816) 531-6565
abenson@bensonlaw.com
jlansford@bensonlaw.com

and

LAW OFFICE OF THOMAS R. FIELDS,  P.A.

By  s/ Thomas R. Fields_____
Thomas R. Fields  Ks Bar # 14317
2544 West 47th Avenue
Kansas City, Kansas  66103
(913) 956-7000
(913) 956-7001 (telefacsimile)
Tom@thomasrfields.com

Attorneys for Plaintiff

15

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed on the Court's electronic filing system which served a copy on counsel identified below this  4th   day of November, 2020:

Michael K. Seck   Ks Bar # 11393
Fisher, Patterson, Sayler & Smith, LLP
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas  66210
(913) 339-6757
(913) 339-6187 (telefacsimile)
mseck@fisherpatterson.com

Attorneys for Defendant Sheriff Randy Roberts

and

Sean M. Sturdivan   Ks Bar #20284
Jana V. Richards   Ks Bar #14385
Tyler M. Waugh   Ks Bar # 28108
Sanders Warren Russell & Scheer LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
(913) 234-6100
(913) 234-6199 (telefacsimile)
s.sturidvan@swrsllp.com
j.richards@swrsllp.com
t.waugh@swrsllp.com

Attorneys for Defendants Officer Matthew Weidl,
City of Lawrence, Kansas, and
Interim Chief Anthony Brixius


 s/ Jamie Kathryn Lansford
Attorney for Plaintiff

16